IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| ROUSE CONSTRUCTION INTERNATIONAL, INC. <br><br> Plaintiff, <br><br> vs. <br><br> ROUSE CONSTRUCTION COMPANY, ANTONIO PERFETTO, RONALD PERFETTO, ALAYNE KYLE, JERRY D. DEVINE, and JOHN DOES 1-10, <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | Civil Action No. _____ |

## COMPLAINT

NOW COMES the plaintiff, Rouse Construction International, Inc. ("RCI"), by and through counsel, complaining of defendants Rouse Construction Company, Antonio ("Tony") Perfetto, Ronald Perfetto, Alayne Kyle, Jerry Devine, and John Doe Defendants 1-10, and alleges and says as follows.

This is an action for minority shareholder oppression, breach of fiduciary duty, breach of contract, conversion, civil conspiracy, unfair and deceptive trade practices, and punitive damages against Defendants based on their oppressive and malicious treatment of Plaintiff RCI. RCI and Defendant Rouse Construction Company (commonly referred to as Rouse Knoxville, hereafter "RK"), were born of the hard work and business acumen of one man – Henry Rouse. As explained more fully below, Mr. Rouse sold a controlling interest in RK to his former employee, Tony Perfetto, retaining a minority share in the company, which share is now owned by RCI. Ironically, Henry Rouse established RK specifically for the benefit of Tony Perfetto, as an act of friendship, when Tony Perfetto's own construction company was facing bankruptcy. To salvage Tony Perfetto

from financial ruin, and to provide him with a firm foundation upon which to conduct his future business, Mr. Rouse agreed to a series of transactions that would help Mr. Perfetto's own construction company complete the projects that it then had underway, wind down Tony Perfetto's construction company, and transition Tony Perfetto to RK, a company established by Mr. Rouse. Mr. Rouse, therefore, leveraged his financial position to allow Tony Perfetto, by virtue of RCI's firm financial footing and ability to secure critical bonding, to continue his career in the construction industry. Due to Mr. Rouse's assistance, Tony Perfetto's career survived; and, in-fact, Tony Perfetto still promotes RK's roots as the company Henry Rouse founded on RK's website. Yet, despite owing his success to Mr. Rouse's friendship and generosity, immediately following Mr. Rouse's death from cancer, Defendant Tony Perfetto, his son, Defendant Ronald Perfetto, his daughter, Defendant Alayne Kyle, and the other controlling officers, directors, and majority shareholders of RK, illegally terminated all of RCI's common stock in RK as well as a long-standing Consulting Agreement between the two companies. These actions were taken deliberately to eliminate the ownership, voting rights, and participation in RK of Amy Rouse (Henry Rouse's widow, and the beneficial owner of RCI), to cut off RCI's right to receive future dividends from RK, and as a pretext for terminating RCI's Consulting Agreement. Most egregiously, Defendants took these actions shortly after Henry Rouse's death, while Amy Rouse was still grieving, in an attempt to capitalize on her grief and undermine her ability to protect RCI's rights, and with the full knowledge that their actions were in direct violation of their fiduciary duties to RCI, RK's Charter, the terms of the RCI-RK Consulting Agreement, and Tennessee law generally. In fact, RK's attorney acknowledged that terminating RCI's common stock and its Consulting Agreement without a request from RCI or its consent to do so, would be "a problem." Defendants have nevertheless ignored RCI's repeated requests that they reverse their illegal actions and restore RCI's shareholder and contractual rights. RCI, therefore, has no choice but to bring this action to seek redress and

protection from the Court.

## Parties, Jurisdiction, and Venue

1.      Plaintiff RCI is a Delaware corporation with its principal place of business in Florida.

2.      RCI is currently 100% owned by the Henry Rouse Marital Deduction Trust ("the Trust"). Amy Rouse, Henry Rouse's widow, is the sole beneficiary of the Trust and thus the beneficial owner of RCI. Amy Rouse is a citizen and resident of Florida.

3.      Defendant RK is a Tennessee corporation with its principal place of business at 11121 Kingston Pike, Knoxville, Tennessee 37934.

4.      Defendant Tony Perfetto is a shareholder, the Chief Executive Officer, and the Chairman of the Board of Directors of Defendant RK. Tony Perfetto is a citizen and resident of Tennessee.

5.      Defendant Ronald Perfetto is Tony Perfetto's son, a shareholder, the President, and a member of the Board of Directors of Defendant RK. Ronald Perfetto is a citizen and resident of Tennessee.

6.      Defendant Alayne Kyle is Tony Perfetto's daughter, and a shareholder and member of the Board of Directors of RK. Mrs. Kyle is a citizen and resident of Tennessee.

7.      Defendant Jerry D. Devine is the Secretary/Treasurer of Defendant RK. Mr. Devine is a citizen and resident of Tennessee.

8.      Plaintiff RCI is currently without sufficient information to specifically identify the other officers, directors, and majority shareholders of Defendant RK that participated in the oppressive, unfair, and deceptive actions that are the subject of this Complaint. RCI, therefore, names those individuals as John Doe Defendants 1-10, subject to its right to amend to identify them more specifically later in this case. Upon information and belief, all of the John Doe defendants are

citizens and residents of Tennessee.

9.      Jurisdiction is proper in this Court under 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

10.     Venue is proper in this district because this is where Defendants reside and do business, and where Defendant RK maintains its principal offices.

## Facts

### History of RK and RCI

11.     RCI and RK were both founded by Henry Rouse. In or about 1987, recognizing that Mr. Rouse had built a profitable construction enterprise through long years of tireless work and dedication, and that his own construction company was failing, Mr. Rouse's former employee Tony Perfetto approached Mr. Rouse regarding whether he would be willing to help Tony Perfetto's company avoid bankruptcy. Mr. Rouse and Mr. Perfetto ultimately agreed on terms for a series of transactions whereby Mr. Rouse would help Tony Perfetto's own construction company complete the projects that it then had underway, wind down Tony Perfetto's construction company, and transition Tony Perfetto to an officer position with, and an ownership interest in, RK, a company established by Mr. Rouse. To accomplish this, Mr. Rouse leveraged his financial position to allow Tony Perfetto, by virtue of RCI's firm financial footing and ability to secure critical bonding, enabling Tony Perfetto to continue his career in the construction industry. As part of Tony Perfetto's transition to RK, it was agreed that a system would be put in place to allow Mr. Perfetto to purchase a controlling interest in RK over time.

12.     After Tony Perfetto assumed control of RK, Mr. Rouse remained a minority shareholder in RK, including by virtue of 2,000 shares of RK Preferred Stock and 88 shares of RK common stock then held by Davco Construction Consultants, Inc. ("Davco"), another corporation

owned by Mr. Rouse, which stock was subsequently transferred to RCI.

RK's Charter

13.     RK's Charter, as amended, governs the relationship between RK and its shareholders, including Davco, and RCI as Davco's successor in interest.

14.     A true and accurate copy of RK's Charter, originally issued in 1977, is attached hereto as Exhibit A.

15.     RK's Charter has been amended four times, on July 23, 1985 ("1985 Amendment"), May 11, 1987 ("1987 Amendment"), on January 30, 1990 ("1990 Amendment"), and on May 23, 2007 ("2007 Amendment").

16.     True and accurate copies of the 1985 Amendment, the 1987 Amendment, the 1990 Amendment, and the 2007 Amendment are attached hereto as Exhibits B - E respectively.

17.     RK's Charter, as amended, provides that the holders of RK common stock have voting rights (one vote per share) and are entitled to dividends as they are declared by the board of directors.

18.     RK's Charter does not give the company power to redeem common stock at the company's option. Common stock is redeemable only at the request of the stockholder. This is in contrast to RK preferred stock, which is specifically redeemable "at the option of the Corporation in whole or in part."

RCI and RK Enter into the Consulting Agreement

19.     Contemporaneously with the sale of RK to Tony Perfetto, as a condition of that sale and to facilitate Mr. Rouse's continued provision of assistance to RK, RK and RCI entered into a Consulting Agreement dated April 1, 1987, a true and accurate copy of which is attached hereto as Exhibit F.

20.     Pursuant to the Consulting Agreement, RCI agreed to serve as a consultant on

retainer to RK as follows: "Retainer. Effective April 1, 1987, RK hereby retains RCI, and RCI agrees to serve, as a consultant to RK on construction and related financing problems." Consulting Agreement § 1.

21.     In return for serving as a consultant, and for being available on retainer to do so going forward, RCI was to be paid as follows: "RK will pay RCI $2,500.00 per month on the first of every month commencing April 1, 1987." Consulting Agreement § 2.

22.     The Consulting Agreement does not require that Mr. Rouse provide consulting services personally. To the contrary, it allows for consulting services to be provided by RCI's employees or contractors, and states that RK will "reimburse RCI for RCI's reasonable disbursements in carrying out its responsibilities hereunder other than salaries and other payroll costs." Consulting Agreement § 2.

23.     The Consulting Agreement also contains the following termination provision:

> Termination. Either party may terminate this agreement as of the end of any month by notice to the other not less than ten days prior to the effective date of termination, provided that prior to or contemporaneously with such termination RK has redeemed all of the shares of Common Stock of RK ("DAVCO SHARES") held by Davco Construction Consultants, Inc., a Delaware Corporation or any successor owner of such shares.

Consulting Agreement § 3.

24.     The Consulting Agreement further specifies the process pursuant to which the Davco Shares may be redeemed – "RK will, upon request of RCI from time to time redeem the number of DAVCO SHARES designated by RCI for an amount equal to the book value of such shares as of the end of the month prior to that in which RCI requests redemption …." Consulting Agreement § 4.

25.     The Consulting Agreement's specification that the Davco Shares are to be redeemed at RCI's request, and not at RK's option, is consistent with common stock redemption rights under RK's Charter.

26. The Consulting Agreement also provides that "[t]he rights and liabilities of the present parties shall bind and inure to the benefit of their respective successors and assigns" and that "[n]o such change or division [of the rights] shall operate to create or enlarge any obligations or diminish any right of any party." Consulting Agreement § 6(a).

<u>The Parties' Performance Under the Consulting Agreement</u>

27. On January 1, 1994, the 88 Davco Shares were transferred to RCI.

28. Consistent with Section 6(a) of the Consulting Agreement, the change in ownership of the Davco Shares did not affect the parties' rights and responsibilities under the Consulting Agreement. RK continued to make the monthly retainer payments to RCI without objection.

29. In fact, from the inception of the Consulting Agreement in 1987, RK consistently paid RCI's retainer without complaint, and RCI fulfilled its obligations under the Consulting Agreement by remaining ready, able, and willing to provide consulting services as required by the Agreement, and by providing such services upon request.

30. Because the Consulting Agreement was not specific to Mr. Rouse, and to prepare for the time when Mr. Rouse would no longer be available to provide consulting services to RK, RCI took steps to make sure alternate consultants were available to fulfill its consulting obligations to RK.

<u>RK Explores Ways to Terminate the Consulting Agreement</u>

31. Although the specific date is not known to RCI, RCI is informed and believes that several years ago, Tony Perfetto and the other individual Defendants began looking for ways to terminate the Consulting Agreement.

32. Defendants never complained that RCI was not performing its obligations under the Consulting Agreement. Rather, Defendants wanted to terminate the Agreement simply because they no longer wanted to be bound by it or to make the payments required thereunder, notwithstanding

that RK specifically bargained for and agreed to this contractual arrangement.

33.    RCI is informed that the individual Defendants repeatedly raised the issue of terminating the Consulting Agreement during the last several years, but RK, in consultation with its advisors and counsel, always concluded that the Consulting Agreement's terms were clear that it could not be terminated until RCI requested redemption of the Davco Shares.

34.    Accordingly, RK continued to make monthly retainer payments to RCI under the Consulting Agreement through January 2016.

<u>Defendants Unilaterally Terminate RCI's Common Stock</u>
<u>After Henry Rouse Passes Away from Cancer</u>

35.    In November 2015, Henry Rouse passed away after battling cancer for several months.

36.    Although Mr. Rouse founded RK, which to this day bears his name, and rescued Tony Perfetto's career from failure, upon Mr. Rouse's death Defendants immediately set about a plan to begin cutting Mr. Rouse's widow out of RK and to terminate the Consulting Agreement.

37.    On January 29, 2016, two months after Henry Rouse passed away, Defendant Devine, in his capacity as RK's Secretary/Treasurer, sent a letter informing RCI that its Consulting Agreement was being unilaterally terminated, and that <u>all</u> of RCI's common stock in RK (a total of 452 shares) was being forcibly redeemed.

38.    A true and accurate copy of the January 29, 2016 termination letter is attached hereto as Exhibit G.

39.    Contemporaneously with its January 29, 2016 letter RK ceased making payments under the Consulting Agreement and ceased to treat RCI as a holder of common stock.

40.    Neither RK nor any of the other Defendants ever complained before or after the January 29, 2016 termination letter that RCI had not performed as required under the Consulting Agreement, or that RCI had not been prepared to perform on retainer as required.

41. The Termination letter did not explain, and Defendants have since refused to explain, why they believe RK has the right to unilaterally terminate the Consulting Agreement or to forcibly redeem common stock held by RCI.

42. RCI objected to RK's termination of the Consulting Agreement as a breach of that Agreement, including by sending monthly letters demanding payment under the Consulting Agreement. RCI further pointed out that the Agreement continues in effect until the Davco Shares have been redeemed, and that no request for redemption of those shares (or any other shares of RCI's common stock in RK) has been made.

43. Defendants' only response to RCI's requests has been to state that they "can't continue monthly gifting to RCI." Exhibit H (April 4, 2016 Letter from Tony Perfetto). Upon information and belief, Tony Perfetto's reference to "monthly gifting" refers to the contractual payments that he personally bargained for and agreed to with RCI.

<u>A Former RK Officer Confirms Defendants Have</u>
<u>No Right to Terminate RCI Common Stock or the Consulting Agreement</u>

44. After receiving the termination letter from Defendant Devine, on or about February 18, 2016, Amy Rouse reached out to a former officer of RK, whom she had known for many years.

45. Mrs. Rouse informed this former RK officer about the Termination Letter and asked about the history of the Consulting Agreement to try and determine the basis for RK's belief that it could unilaterally terminate that Agreement and RCI's common stock. Since this individual had been with the company since its founding, Mrs. Rouse believed he would know if there was some basis for RK's actions of which she was unaware.

46. RK's former officer confirmed to Mrs. Rouse that RK cannot terminate the Consulting Agreement until RCI requests redemption of the Davco Shares, and that it is illegal and discriminatory for RK to terminate RCI's common stock, but not the common stock held by the other stockholders.

47.     He further stated that he had been concerned that this would happen after Henry Rouse died. He confirmed that for several years before he left RK, Tony Perfetto had repeatedly stated that he wanted to find a way to get out of the Consulting Agreement.

48.     The following day, RK's former officer called Mrs. Rouse back. He told her that he had been to see RK's attorney, Scott Hurley, on another matter and had mentioned to Mr. Hurley that Henry Roused had passed away, and that Mr. Hurley would probably hear from Tony Perfetto about trying to terminate the Consulting Agreement.

49.     Mr. Hurley confirmed that he had already spoken to Tony Perfetto about terminating the Consulting Agreement by "buying out" RCI's common stock. When the former RK officer explained that RCI was not interested in selling its stock, Mr. Hurley responded, "Oh. Then Tony has a problem."

50.     Mr. Hurley's statement was an acknowledgement that RK does not have the power to forcibly redeem RCI's common stock, either to terminate the Consulting Agreement or for any other purpose.

51.     Mr. Hurley's relaying of his conversation with Tony Perfetto to RK's former officer, who was no longer a RK employee, and/or the former RK officer's subsequent relaying of that conversation to Mrs. Rouse, waived any attorney-client privilege or attorney work product protection that may have attached to those conversations, as well as the subject matter of RK's decision to forcibly redeem RCI's common stock.

<u>Defendants Persist in Oppressing RCI as a Minority Shareholder</u>

52.     By letters and telephone calls, RCI and its representatives and legal counsel have repeatedly objected to Defendants' termination of the Consulting Agreement and RCI's common stock.

53.     However, RK has not been deterred in its efforts to illegally force Amy Rouse and

RCI out of the company and to terminate the Consulting Agreement.

54.     On March 25, 2016, RK sent another letter to RCI, this time informing it that RCI's common stock was being "retired" and that the "funds associated with the retirement" of that stock were being placed in escrow, payable to RCI upon receipt of RCI's stock certificate C107.

55.     A true and accurate copy of RK's March 25, 2016 letter is attached hereto as Exhibit I.

56.     RCI again objected and requested that RK forego its attempt to forcibly redeem RCI's common stock and that RK comply with the terms of the Consulting Agreement.

57.     RCI has never surrendered its RK common stock certificate, and does not intend to do so.

58.     There is no requirement that RCI surrender its common stock for book value. RCI is further informed and believes that the funds deposited in escrow by RK, if any, are significantly less than the actual value of RCI's common stock.

59.     To date, RK has refused to rescind its decision to forcibly redeem RCI's common stock and currently considers that stock terminated or "redeemed." RK has also refused to make any further payments under the Consulting Agreement.

## FIRST CLAIM FOR RELIEF
### (Minority Shareholder Oppression/Violation of Tenn. Code Ann. § 48-24-301 – All Defendants)

60.     The foregoing allegations are realleged and incorporated by reference as if fully set forth herein.

61.     As set forth above, Defendants have acted, are acting, and will continue to act in a manner that is illegal, oppressive, and fraudulent.

62.     Defendants' actions constitute more than merely poor business judgment, and those actions thwart RCI's reasonable expectations regarding its ownership of RK common stock.

63. Defendants' forcible expulsion of RCI as a common stockholder of RK in violation of RK's Charter is blatant and egregious minority shareholder oppression.

64. Pursuant to Tenn. Code Ann. § 48-24-301(2)(B), this Court has the authority to dissolve RK based on Defendants' oppressive actions.

65. However, Tennessee law recognizes that immediate dissolution is an extreme remedy, and the Court may utilize less severe penalties to protect RCI from oppression.

66. Alternate remedies that are warranted in this case include: an order for dissolution of RK at a specified future date, effective only if Defendants fail to cease their oppressive conduct; an injunction requiring Defendants to comply with the terms of RK's Charter, to acknowledge and confirm that RCI continues to hold 452 shares of RK common stock, and to cease and desist from continuing or renewing their oppressive conduct in the future; and an award of damages to RCI as compensation for injuries suffered as a result of Defendants' oppressive conduct.

## SECOND CLAIM FOR RELIEF
### (Breach of Fiduciary Duty & Violation of Tenn. Code Ann. §§ 48-18-403 and 48-18-301 – Defendants Tony Perfetto, Ronald Perfetto, Alayne Kyle, Jerry Devine, and John Does 1-10)

67. The foregoing allegations are realleged and incorporated by reference as if fully set forth herein.

68. As officers and directors of RK, Defendants Tony Perfetto, Ronald Perfetto, Alayne Kyle, Jerry Devine, and the other officers and directors of RK (the John Doe Defendants), owed fiduciary duties to RK's shareholders, including RCI as a holder of RK common stock.

69. Pursuant to Tenn. Code Ann. §§ 48-18-403 and 48-18-301, as officers and directors of RK these Defendants' fiduciary duties included the duty to act in good faith, with the care that ordinarily prudent persons in like positions would exercise under similar circumstances, and in a manner that they reasonably believed to be in the best interests of RK's shareholders, including RCI.

70.     With respect to matters that affect the shareholders directly, including matters that affect stock ownership, voting rights, and rights to receive dividend distributions, Defendants owe fiduciary duties directly to the shareholders, including RCI.

71.     Additionally, Defendants Tony Perfetto, Ronald Perfetto, and Alayne Kyle, individually or collectively, are majority shareholders of RK. In addition to their fiduciary duties as officers and directors, these Defendants owe substantially identical fiduciary duties to RCI as majority shareholders of RK (a closely held company).

72.     As set-forth above, Defendants breached their fiduciary duties to RCI, including, but not limited to, by causing RK to forcibly redeem RCI's common stock without any right to do so.

73.     Defendants' actions were taken in bad faith; they were not taken with the care that ordinarily prudent persons in like positions would exercise under similar circumstances; Defendants did not reasonably believe that their actions were in the best interests of RK or its shareholders; and Defendants' actions were motivated by malice, avarice, and self-interest.

74.     Defendants knew that RK did not have the right to forcibly redeem RCI's common stock, but approved the termination of that stock anyway.

75.     Further, RCI is informed and believes that in the more than 30 year history of the company, RK has never once redeemed (or attempted to redeem) common stock without a request for redemption from the stockholder.

76.     Upon information and belief, RK has not forced any shareholders other than RCI to redeem their common stock, including the Perfetto family members that own RK common stock.

77.     Defendants' forced redemption of RCI's common stock was malicious and undertaken to unilaterally terminate the Consulting Agreement, and to eliminate RCI's common stock voting rights, its rights to receive dividend payments, and to generally eliminate RCI's (and thus Amy Rouse's) right to participate in RK's affairs as a common stockholder.

78.     These Defendants additionally acted in their own interests and to the detriment of RCI by using corporate funds to forcibly redeem RCI's common stock. By using corporate funds, these Defendants, who upon information and belief are all RK stockholders, increased their respective percentage ownership in the company, and consequently increased their voting power and percentage of future dividend payments.

79.     Defendants' forcible redemption of RCI's common stock, therefore, constituted a conflicting interest transaction under Tenn. Code Ann. § 48-18-701, and Defendants did not follow the procedures required under Tenn. Code Ann. § 48-18-703 or § 48-18-704.

80.     Accordingly, RCI's claims against these defendants are brought to remedy an injury that is distinct from any harm incurred by the corporation and arises out of a special duty owed to RCI by these Defendants as officers, directors, and majority shareholders of RK.

81.     As a direct and proximate result of Defendants' breaches of their fiduciary duties RCI has been damaged in an amount to be determined at trial, but in any event in excess of $75,000, exclusive of interest and costs.

**THIRD CLAIM FOR RELIEF**
**(Breach of Charter – Against Defendant RK)**

82.     The foregoing allegations are realleged and incorporated by reference as if fully set forth herein.

83.     As set-forth above, RK's Charter does not authorize RK to unilaterally redeem the company's common stock without a request for redemption from the stockholder.

84.     RK's Charter is the equivalent of a contract between RK and RCI under Tennessee law.

85.     RK breached its Charter by forcibly redeeming RCI's 452 shares of common stock without a request for redemption from RCI, and over RCI's express objections to such redemption.

86.      As a direct and proximate result of RK's breach of its Charter, RCI has been

damaged in an amount to be determined at trial, but in any event in excess of $75,000, exclusive of interest and costs.

## FOURTH CLAIM FOR RELIEF
### (Breach of the Consulting Agreement – Against Defendant RK)

87.     The foregoing allegations are realleged and incorporated by reference as if fully set forth herein.

88.     As set forth above, the Consulting Agreement is terminable only upon redemption of the Davco Shares, which are currently owned by RCI, and which are only redeemable at RCI's request.

89.     In direct violation of the terms of the Consulting Agreement, RK forcibly redeemed the Davco Shares, along with all of RCI's other shares of RK common stock, to force a termination of the Consulting Agreement.

90.      Although RK knows that its forced termination of the Consulting Agreement is invalid, RK has refused to abide the terms of the Consulting Agreement and pay the amounts due thereunder, without justification.

91.     As a direct and proximate result of RK's breaches of the Consulting Agreement RCI has been damaged in an amount to be determined at trial, but in any event in excess of $75,000, exclusive of interest and costs.

92.     Further, in addition to past damages, RCI is entitled to specific performance of the Consulting Agreement.

## FIFTH CLAIM FOR RELIEF
### (Conversion – Against All Defendants)

93.     The foregoing allegations are realleged and incorporated by reference as if fully set forth herein.

94.     As set forth above, Defendants have appropriated RCI's common stock and

appurtenant ownership interest, voting rights, and rights to receive future dividends to themselves, for their own use and benefit.

95.    Defendants have intentionally exercised dominion over RCI's common stock and related ownership interest in RK, including by wrongfully appropriating to themselves at RCI's expense greater ownership interests in RK.

96.    Defendants' actions were taken in defiance of RCI's rights.

97.    As a direct and proximate result of Defendants' conversion, RCI has been damaged in an amount to be determined at trial, but in any event in excess of $75,000, exclusive of interest and costs.

**SIXTH CLAIM FOR RELIEF**
**(Civil Conspiracy – Against Defendants Tony Perfetto, Ronald Perfetto,**
**Alayne Kyle, Jerry Devine, and John Does 1-10)**

98.    The foregoing allegations are realleged and incorporated by reference as if fully set forth herein.

99.    As alleged above, Defendants Tony Perfetto, Ronald Perfetto, Alayne Kyle, Jerry Devine, and one or more of the John Doe Defendants acted together to illegally deprive RCI of its shareholder rights in RK, the value of those rights, and RCI's rights under the Consulting Agreement.

100.    These actions were accomplished pursuant to a common design between these Defendants.

101.    That design was accomplished by concerted action with an unlawful purpose – the deprivation of RCI's rights – including, upon information and belief, through a vote or agreement by RK's board and/or majority shareholders to take the actions alleged hereinabove.

102.    Defendants have taken multiple overt actions to further their conspiracy, including the aforementioned board and/or majority shareholder vote, and sending the termination letter to

RCI.

103.     These Defendants' actions toward RCI were *ultra vires*, and to the extent these Defendants are or could be considered employees of RK, were taken outside the scope of that employment.

104.     These Defendants' actions towards RCI were taken for their own personal benefit and not for the benefit of RK. In fact, by acting in violation of Tennessee law, these Defendants' actions have substantially harmed RK, including by exposing the company to significant liability and possibly necessitating the dissolution of the company.

105.     As a direct and proximate result of these Defendants' conspiracy, RCI has been damaged in an amount to be determined at trial, but in any event in excess of $75,000, exclusive of interest and costs.

**SEVENTH CLAIM FOR RELIEF**
**(Unfair Trade Practices/Violation of Tenn. Code Ann.**
**§ 47-18-104, *et seq*. – Against All Defendants)**

106.     The foregoing allegations are realleged and incorporated by reference as if fully set forth herein.

107.     RCI has suffered an ascertainable loss of money and property as a direct and proximate result of Defendants' actions, including the following:

   a.  Illegally forcing the redemption of all shares of RK common stock held by RCI, when RCI never requested that those shares be redeemed, and when RCI specifically objected to such redemption.

   b.  Using the illegal redemption of common stock to terminate the Consulting Agreement.

   c.  Using RK's corporate funds to illegally redeem RCI's common stock, and thereby converting to the individual defendants proportionately larger ownership interests in

RK, increased voting power, and larger proportionate shares of RK's dividends, to RCI's detriment.

108. Defendants' actions, described above, were unfair, deceptive, and coercive under Tennessee's Unfair Trade Practices Act.

109. As an owner of RK common stock, RCI is a "consumer" entitled to protection under the Act.

110. As a direct and proximate result of Defendants' unfair, deceptive, and coercive actions, RCI has been damaged in an amount to be determined at trial, but in any event in excess of $75,000, exclusive of interest and costs.

111. Further, Defendants' actions were willful and in knowing violation of the Tennessee Consumer Protection Act. RCI is, therefore, entitled to have its actual damages trebled, pursuant to Tenn. Code. Ann. § 47-18-109(3).

## EIGHTH CLAIM FOR RELIEF
### (Punitive Damages – Against All Defendants)

112. The foregoing allegations are realleged and incorporated by reference as if fully set forth herein.

113. Defendants' actions in fraudulently terminating the Consulting Agreement and in forcibly redeeming RCI's Common Stock when they knew they had no basis to do so were intentional, willful, wanton, and reckless, and were undertaken with avarice and malice against RCI and Henry Rouse's widow, Amy Rouse.

114. Such actions support an award of punitive damages against Defendants, in addition to RCI's actual damages, in an amount to be determined at trial.


WHEREFORE, Rouse Construction International prays the Court as follows:

1. That the Court enter a preliminary and permanent injunction requiring Defendants

18

to comply with the terms of RK's Charter, and to recognize that RCI continues to hold 452 shares of RK common stock, and prohibiting Defendants from continuing or renewing their oppressive conduct in the future; and

2. That the Court enter an order dissolving RK at a specified future date if Defendants do not cease their oppression of RCI; and

3. That the Court enter judgment awarding RCI its damages incurred as a result of Defendants' oppressive actions, jointly and severally against all Defendants, in an amount to be determined at trial, but in any event in excess of $75,000, exclusive of interest and costs, plus pre and post-judgment interest, as permitted by law; and; and

4. That the Court enter judgment awarding RCI its damages incurred as a result of Defendants' breaches of their fiduciary duties, jointly and severally against Defendants Tony Perfetto, Ronald Perfetto, Alayne Kyle, Jerry Devine, and the appropriate John Doe defendants, in an amount to be determined at trial, but in any event in excess of $75,000, exclusive of interest and costs, plus pre and post-judgment interest, as permitted by law; and

5. That the Court enter judgment awarding RCI its damages incurred as a result of RK's breaches of its Charter and the Consulting Agreement in an amount to be determined at trial, but in any event in excess of $75,000, exclusive of interest and costs, plus pre and post-judgment interest, as permitted by law; and

6. That the Court enter judgment requiring specific performance of the Consulting Agreement by RK going forward, until the Consulting Agreement terminates according to its terms; and

7. That the Court enter judgment awarding RCI its damages incurred as a result of Defendants' conversion, jointly and severally against all Defendants, in an amount to be determined at trial, but in any event in excess of $75,000, exclusive of interest and costs, plus pre

and post-judgment interest, as permitted by law; and

8.      That the Court enter judgment awarding RCI its damages incurred as a result of Defendants' civil conspiracy, jointly and severally against Defendants Tony Perfetto, Ronald Perfetto, Alayne Kyle, Jerry Devine, and the appropriate John Doe defendants, in an amount to be determined at trial, but in any event in excess of $75,000, exclusive of interest and costs, plus pre and post-judgment interest, as permitted by law; and

9.      That the Court enter judgment awarding RCI its damages incurred as a result of Defendants' unfair, deceptive, and coercive trade practices, jointly and severally against all Defendants, in an amount to be determined at trial, but in any event in excess of $75,000, exclusive of interest and costs, plus pre and post-judgment interest, as permitted by law; and

10.     That the Court find that Defendants' unfair and deceptive actions were willful and in knowing violation of Tennessee's Unfair Trade Practices Act, and, accordingly enter an Order awarding RCI three times its actual damages, pursuant to Tenn. Code Ann. § 47-18-109(3); and

11.     Alternatively, that the Court enter judgment awarding RCI punitive damages against all Defendants, jointly and severally, in an amount to be determined at trial; and

12.     That the Court award RCI its reasonable costs, including its attorneys' fees, incurred in pursuing this action, pursuant to Tenn. Code Ann. §§ 48-18-109(e)(1), 48-24-302(d), and as otherwise allowed by law; and

13.     For such other and further relief as the Court determines is just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff herein makes its demand for trial by jury of all issues in this action pursuant to Rules 38 and 39 of the Federal Rules of Civil Procedure.

This the 24th day of August, 2016.

/s/ Joshua D. Wilson
Joshua D. Wilson
B.P. R. No. # 031486
WIGGINS, CHILDS, PANTAZIS, FISHER &
GOLDFARB, LLC
5214 Maryland Way, Suite 402
Brentwood, TN 37027
Telephone: (615) 964-5215
Facsimile: (205) 314-0766


Richard Keshian
B.P.R. No. 033726 (*Application for admission and admission pro hac vice to be submitted*)


Dustin T. Greene
N.C. Bar No. 38193 (*Application for admission and admission pro hac vice to be submitted*)


*Attorneys for Plaintiff*
*Rouse Construction International, Inc.*

**KILPATRICK TOWNSEND & STOCKTON LLP**
1001 West Fourth Street
Winston-Salem, North Carolina 27101
Telephone: (336) 607-7300
Facsimile (336) 607-7500